UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 21-10208-NMGs |
| ) | |
| (9)   EDISON KLOTZ, ) | |
| Defendant ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The Untied States of America, by and through Assistant United States Attorney Alathea E. Porter, hereby respectfully submits this sentencing memorandum in connection with the sentencing of defendant Edison Klotz (hereinafter, the "Defendant"). On March 14, 2024, the Defendant waived Indictment and pled guilty to Counts One and Two of a two-count Second Superseding Information, charging Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 (Count One), and Distribution of and Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C) (Count Two). *See* ECF Dkt. 534.

As set forth herein, and for the reasons to be stated at the sentencing hearing, the government recommends that the Court sentence the Defendant to 46 months of imprisonment, followed by 36 months of supervised release, a $200 special assessment, and forfeiture as alleged in the Second Superseding Information.

### Background of the Case

The background of the case is set forth in detail in the final Pre-Sentence Report ("PSR"), prepared by the United States Probation Office ("Probation"), and is therefore not fully restated herein. PSR, ¶¶ 20-36. In summary, this case involves a conspiracy among large-scale methamphetamine distributors in the New England area. *Id.* The investigation began when a

cooperating witness ("CW") provided investigators with information about James Holyoke ("Holyoke"), a large-scale methamphetamine distributor. PSR, ¶ 20. The Defendant was an associate of Holyoke, who worked with Holyoke to distribute methamphetamine. PSR, ¶ 21.

Over the course of the investigation, the CW participated in twelve successful controlled purchases of methamphetamine from the drug trafficking organization. *Id.* On November 5, 2020, the Defendant delivered 108.7 grams of 100% pure methamphetamine to the CW, on behalf of Holyoke. PSR, ¶¶ 21, 27-33. Holyoke, who was the Defendant's associate, was involved in an additional ten controlled purchases of methamphetamine, totaling nearly 4 kilograms of methamphetamine. PSR, ¶ 34. Through those controlled purchases, investigators identified Holyoke's methamphetamine supplier as Reshat Alkayisi ("Alkayisi"). PSR, ¶ 21.

Beginning in May 2021, pursuant to Title III wiretap orders, investigators intercepted communications to and from Alkayisi's telephone for a total of sixty days. PSR, ¶ 35. During those sixty days, Alkayisi supplied Holyoke with methamphetamine on a number of occasions, including on May 31, 2021, when Alkayisi had his associate Brian Keleman ("Keleman") deliver ten pounds (or approximately 4.5 kilograms) of methamphetamine to Holyoke. A few hours after Keleman delivered the ten pounds of methamphetamine to Holyoke, investigators observed Holyoke go to an Extra Space Storage facility. Records from the facility indicate that the Defendant rented the storage unit utilized by Holyoke, and video surveillance footage indicates that the Defendant was with Holyoke at the storage unit just hours after Holyoke obtained ten pounds of methamphetamine from Keleman. Based on the investigation, investigators believe that Holyoke stored the methamphetamine at a storage unit at that facility.

As set forth in the PSR, over the course of the investigation, based on controlled purchases, seizures from customers, and package seizures, in total investigators seized over 65 kilograms of pure methamphetamine from the drug trafficking organization. PSR, ¶ 21-36.

## Sentencing Guidelines

The final PSR determined that Defendant's total offense level is 21. PSR, ¶ 51. That calculation is based on a base offense level of 30, since the Defendant is accountable for 108.7 grams of pure methamphetamine. *See id.*; *see also* USSG § 2D1.1(c)(5). Probation then reduced the Defendant's offense level by 2 levels, pursuant to USSG § 5C1.2 and § 2D1.1(b)(18). PSR, ¶ 43. Probation also reduced the offense level by 3 levels based on the Defendant's acceptance of responsibility. PSR, ¶¶ 49-50. Probation further reduced the Defendant's offense level by 4 levels, pursuant to USSG § 3B1.2(a), finding that the Defendant was a minimal participant in the criminal activity. PSR, ¶ 45.[1] Probation also determined that the Defendant falls into criminal history category III. PSR, ¶ 72. As a result, Probation concluded that the Defendant's sentencing guideline range is 46-57 months. PSR, ¶ 127.[2]

## Consideration of the Section 3553(a) Factors

Taking into account the Defendant's role in the offense, his personal history and characteristics, as well as the nature of the offense, and considering the factors set forth in 18

---

[1] The government inadvertently neglected to file a formal objection to the PSR guidelines calculation. While the government agrees that the Defendant should receive a mitigating role reduction, it submits that the Defendant was a minor participant (not a minimal participant), and therefore, he should receive a 2 level reduction, as opposed to a 4 level reduction. In addition to delivering over 108 grams of pure methamphetamine for one of the controlled purchases, the Defendant rented a storage unit that appears to have been used by Holyoke to store large quantities of methamphetamine. The Defendant was not just the delivery man for one transaction. Rather, he was a close associate and partner of Holyoke.

[2] If the Defendant were to receive a 2 level reduction as opposed to a 4 level reduction for his role in the offense, the resulting guideline sentencing range would be 57-71 months.

U.S.C. § 3553(a), the Government respectfully suggests that a sentence of 46 months is sufficient, but not greater than necessary, to comply with the purposes of set forth in 18 U.S.C. § 3553(a).

   1. **Nature of the Offense**

Methamphetamine is a deadly and highly addictive drug that is an increasingly serious problem throughout the United States and in the District of Massachusetts.[3]  Abuse of this potent stimulant is plaguing many parts of the country, and the government has seen a significant rise in the amount of methamphetamine in the District of Massachusetts over the course of the last three years.

Recent national reports have confirmed that methamphetamine abuse is increasing dramatically.  The National Institute on Drug Abuse found that among people aged 12 or older in 2021, 0.9% (or about 2.5 million people) reported using methamphetamine within the prior 12 months.[4]  And that reflects only those who _reported_ use.  Moreover, methamphetamine is one of the most commonly misused stimulant drugs in the world.[5]  "The consequences of methamphetamine misuse are terrible for the individual—psychologically, medically, and socially.  Using the drug can cause memory loss, aggression, psychotic behavior, damage to the cardiovascular system, malnutrition, and severe dental problems."[6]  In addition to these horrific

---

[3] Martha Bebinger, *"Meth Use Is Rising In Boston, Intensifying The Opioid Crisis,"* appearing at https://www.wbur.org/news/2018/11/21/meth-worsening-opioid-epidemic (last accessed June 24, 2024).

[4] *See* NIDA. "Overview." *National Institute on Drug Abuse*, 24 Feb. 2023, https://nida.nih.gov/publications/research-reports/methamphetamine/overview (last accessed June 24, 2024).

[5] *Id.*

[6] *Id.*

effects on individual health, "methamphetamine misuse threatens whole communities, causing new waves of crime, unemployment, child neglect or abuse, and other social ills."[7]

Among people aged 12 and older in 2020, an estimated 0.6% (or about 1.5 million people) had a methamphetamine use disorder in the prior 12 months.[8] In 2022, there were 33,355 methamphetamine-related deaths nationwide.[9] Indeed, this crisis has worsened each year since 2015.[10] According to the Drug Enforcement Administration, thirty-one percent of drug-related deaths in the United States are caused by psychostimulants – mostly methamphetamine.[11] As of June 2, 2024, there were at 34,595 methamphetamine related deaths nationwide for the prior twelve month period.[12]

Equally devastating, as methamphetamine production has shifted from makeshift, local labs to sophisticated Mexican laboratories, methamphetamine production and purity have increased exponentially.[13] Purity of methamphetamine has risen to nearly 100 percent. Indeed, in

---

[7] *Id.*

[8] *Id.*

[9] National Center for Health Statistics, *VSRR Provisional Drug Overdose Death Counts*, appearing at https://data.cdc.gov/d/xkb8-kh2a (hereinafter, "2022 VSRR Overdose Death Counts") (last accessed Dec. 9, 2023).

[10] *Id.*

[11] Drug Enforcement Administration, *2024 National Drug Threat Assessment*, appearing at https://www.dea.gov/sites/default/files/2024-05/5.23.2024%20NDTA-updated.pdf (last viewed June 24, 2024) ("DEA 2024 Assessment").

[12] National Center for Health Statistics, *National Vital Statistics System, Provisional Drug Overdose Death Counts,* appearing at https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm (last accessed June 24, 2024) (hereinafter, "2024 VSRR Overdose Death Counts").

[13] Frances Robles, "*Meth, the Forgotten Killer, is Back. And It's Everywhere*", The New York Times, February 13, 2018, appearing at https://www.nytimes.com/2018/02/13/us/meth-

this case investigators seized over 60.8 kilograms of 100% pure methamphetamine. As the New York Times has reported, this combination of increased production and increased purity has been particularly lethal: "There is more meth on the streets today, more people are using it, and more of them are dying."[14]

In recent years, methamphetamine has become much more prevalent in the Northeast.[15] Most of the methamphetamine supply is produced in Mexico and transported to the United States.[16] That is because methamphetamine produced in Mexico presents a lower cost, higher purity, and higher potency alternative.[17] Purer, cheaper methamphetamine leads to more deaths. The number of methamphetamine overdoses in Massachusetts alone increased threefold from 2018 to 2022 (growing from 70 deaths to 210).[18] Between June 2023 and June 2024, there were 215 methamphetamine-related overdose deaths in Massachusetts.[19] In fact, "[t]he rate of all drug-related E[mergency] D[epartment] visits was highe[r] among patients residing in the Northeast[ern

---

crystal-drug.html (hereinafter, "Frances Robles, *Meth, the Forgotten Killer, is Back. And It's Everywhere*") (last accessed June 24, 2024).

[14] Frances Robles, *Meth, the Forgotten Killer, is Back. And It's Everywhere.*

[15] U.S. Department of Justice Drug Enforcement Administration, *2020 National Drug Threat Assessment*, available at https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf, at 23 (last accessed June 24, 2024) (hereinafter, "DEA 2020 Assessment"); Streck, Joanna M et al., *Injection of Methamphetamine Has Increased in Boston, Massachusetts: 5 Waves of Centers for Disease Control and Prevention State Surveillance Data*, 17.3 J. OF ADDICTION MEDICINE 349–352 (2023) (last viewed July 12, 2023).

[16] DEA 2024 Assessment, at 31.

[17] *Id.*

[18] 2022 VSRR Overdose Death Counts.

[19] 2024 VSRR Overdose Death Counts.

6

United States] (2,531 per 100,000 [residents])" than any other region in the nation.[20]

Even when not lethal, the physical and emotional effects of methamphetamine abuse are dramatic. Methamphetamine has a horrific impact on its users and on the community. Methamphetamine is a tremendously addictive drug, which can cause dramatic physical and emotional changes on those who use it, including increases in aggressive and violent behavior.[21] The physical effects on users are well-documented. The emotional changes are equally devastating:

> Chronic abusers may exhibit symptoms that can include significant anxiety, confusion, insomnia, mood disturbances, and violent behavior. They also may display a number of psychotic features, including paranoia, visual and auditory hallucinations, and delusions (for example, the sensation of insects creeping under the skin). Psychotic symptoms can sometimes last for months or years after a person has quit abusing methamphetamine, and stress has been shown to precipitate spontaneous recurrence of methamphetamine psychosis in formerly psychotic methamphetamine abusers.[22]

And, unlike opioid addiction, there are no approved drugs available for treatment of

---

[20] Substance Abuse and Mental Health Services Administration, PEP22-07-03-002, *Findings from Drug-Related Emergency Department Visits, 2021*, https://store.samhsa.gov/sites/default/files/pep22-07-03-002.pdf (2022), at 9 (last accessed June 24, 2024).

[21] Mark A. R. Kleiman, Jonathan P. Caulkins, and Angela Hawken, *Drugs and Drug Policy: What Everyone Needs to Know* 120 (Oxford University Press 2011) ("There is . . . a much stronger association between violence and regular methamphetamine use. Heavy use of methamphetamine increases the likelihood of attack behaviors and aggression, with the most compelling evidence coming from laboratory studies involving mice.").

[22] National Institute on Drug Abuse, *What are the long-term effects of methamphetamine abuse,* April 7, 2017, appearing at https://www.drugabuse.gov/publications/research-reports/methamphetamine/what-are-long-term-effects-methamphetamine-abuse (last accessed June 24, 2024).

methamphetamine addiction.[23] Addicted users who choose to stop using methamphetamine may face withdrawal symptoms including severe depression, psychosis, and intense drug cravings.[24] Even methamphetamine addicts who manage to overcome their addiction "will be at risk for relapse for years and possibly for their whole lives."[25]

### 2. Characteristics of the Defendant

The Defendant is a 48 year old man, who has struggled with addiction for many years. PSR, ¶¶ 88, 100. As detailed in the PSR, the Defendant had a difficult early childhood and homelife, which involved multiple forms of abuse. PSR, ¶¶ 88-89. For his teenage years, the Defendant lived in a stable and loving foster home. PSR, ¶ 89. At the age of 17, however, the Defendant returned to living with family members and again suffered from abuse. PSR, ¶ 89.

The Defendant began using illegal drugs at the age of 16, and he reports regularly using marijuana and cocaine until the age of 36. PSR, ¶¶ 102-104. At the age of 23, the Defendant began using methamphetamine, and did so for a five year period. PSR, ¶ 106. According to the PSR, the Defendant stopped using methamphetamine for approximately 9 years, but then relapsed and began using methamphetamine again after his mother passed away in 2012. PSR, ¶ 88, 106. Prior to pleading guilty in this case, the Defendant was on pre-trial release, and during that period of time, he tested positive for methamphetamine use on a number of occasions. PSR, ¶¶ 2-3, 6, 9.

---

[23] Carmen Heredia Rodriguez, *"Meth's Resurgence Spotlights Lack of Meds To Combat the Addiction,"* Kaiser Health News, January 14, 2019, appearing at https://khn.org/news/meths-resurgence-spotlights-lack-of-meds-to-combat-the-addiction/ (last viewed June 24, 2024).

[24] National Institute on Drug Abuse, *Methamphetamine Drug Facts*, May 16, 2019, appearing at https://nida.nih.gov/publications/drugfacts/methamphetamine (last accessed June 24, 2024).

[25] National Institute on Drug Abuse, *Understanding Drug Use and Addiction DrugFacts*, June 6, 2018, appearing at https://nida.nih.gov/publications/drugfacts/understanding-drug-use-addiction (last accessed June 24, 2024).

The Defendant's criminal history also reflects that of an addict. Dating back to the age of 18, the Defendant committed multiple minor offenses, including larceny, illegal possession of controlled substances, operating under the influence, and assault and battery charges. As a result of that criminal history, the Defendant falls in criminal history category III.

### 3. Need for the Sentence Imposed

As the discussion above makes clear, there is a compelling need to deter individuals who may be inclined to participate in drug trafficking — particularly substances as dangerous as methamphetamine. A significant sentence of imprisonment is warranted to deter both the Defendant himself, as well as others, from engaging in trafficking of methamphetamine, as the dangers associated with that conduct cannot be overstated. Individuals tempted to engage in drug trafficking must understand that *any* involvement with methamphetamine will have immediate and harsh consequences. Imprisonment is necessary to send a strong warning to others who might otherwise consider involvement with this dangerous drug that they must resist the temptation.

The evidence suggests that the Defendant's participation in drug trafficking was primarily driven by his own addiction; not profit. It is further apparent that the Defendant's participation in the charged conspiracy was limited. While the nature of these offenses is very serious, the Defendant's limited role and his personal history and characteristics are factors that support the government's sentencing recommendation. The sentence recommended by the government will hopefully be sufficient to deter the Defendant from resuming a life of criminal activity, to deter others who might otherwise engage in this extremely harmful criminal conduct, and it is also necessary to promote respect for the law and to provide just punishment for the offense.

## CONCLUSION

For the reasons set forth herein, and as will be addressed at the sentencing hearing, the

government recommends that the Court sentence the Defendant to 46 months of prison, three years of supervised release, and a mandatory special assessment of $200.

Dated: June 25, 2024

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:   */s/ Alathea E. Porter*
ALATHEA E. PORTER
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 25, 2024.

*/s/ Alathea E. Porter*
ALATHEA E. PORTER
Assistant U.S. Attorney